**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **KASEY DOTY, as Personal Representative of the Estate of RANDALL LEE THAMES, JR.,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **CASE NO.: _____** |
| **v.** | ) ) | **JURY TRIAL DEMANDED** |
| **JOHN HAMM, ROLANDA CALLOWAY, KATRINA BROWN, PAMELA HARRIS, JOHN DOE 1, JOHN DOE 2, and JOHN DOE 3,** | ) ) ) ) ) | |
| **Defendants.** | ) | |

## COMPLAINT

**COMES NOW,** the Plaintiff, Kasey Doty, as Personal Representative of the

Estate of Randall Lee Thames, Jr., by and through the undersigned counsel, and

alleges the following:

## PRELIMINARY STATEMENT

Plaintiff, Kasey Doty, is bringing this action as Personal Representative of the

Estate of Randall Lee Thames, Jr. ("Mr. Thames" or "the decedent"). At all times

relevant to this action, Mr. Thames was in the custody of the Alabama Department

of Corrections ("ADOC"), being housed at Elmore Correctional Facility ("Elmore")

in Elmore County, Alabama.

1

As alleged more fully herein, Mr. Thames was subjected to extortion, threats, intimidation, and repeated violence by fellow inmates prior to his death. Despite actual and/or constructive knowledge of the pervasive violence, extortion, and dangerous conditions within Elmore, Defendants failed to take reasonable measures to protect Mr. Thames from a substantial risk of serious harm.

On June 20, 2024, Mr. Thames was found unresponsive while incarcerated at Elmore and was pronounced dead later that day. The Alabama Department of Forensic Sciences concluded that Mr. Thames died as the result of blunt force trauma to the torso and classified the manner of death as homicide. The autopsy revealed extensive injuries, including multiple rib fractures, internal hemorrhaging, and traumatic injuries to his head and torso. He was only forty-three years old.

## PARTIES

1. **Plaintiff Kasey Doty ("Plaintiff")** is a citizen of the United States, a citizen of the State of Alabama, and is at least nineteen (19) years of age. Plaintiff is the duly appointed Personal Representative of the Estate of Randall Lee Thames, Jr., and brings this action on behalf of the Estate pursuant to Alabama law. Mr. Thames was a citizen of the United States, a citizen of the State of Alabama, and was housed at Elmore Correctional Facility at the time of his death.

2. **Defendant John Hamm** ("Defendant Hamm") is a citizen of the United States, a citizen of the State of Alabama, and is at least nineteen (19) years of age.

2

Defendant Hamm as appointed the Commissioner of the ADOC on January 1, 2022, and served in that capacity at the time of Mr. Thames's death. As Commissioner, he was responsible for twenty-seven (27) correctional facilities and the inmates housed at those facilities, including Elmore. As Commissioner, Defendant Hamm was responsible for establishing, implementing, monitoring, and enforcing policies regarding inmate safety, housing assignments, inmate supervision, institutional security, and the prevention of inmate-on-inmate violence throughout the ADOC. At all times relevant to this action, Defendant Hamm acted under color of state law and within the course and scope of his employment.

3. **Defendant Rolanda Calloway** ("Defendant Calloway") is a citizen of the United States, a citizen of the State of Alabama, and is at least nineteen (19) years of age. Upon information and belief, at all times relevant to this action, Defendant Calloway was employed in a supervisory capacity as Correctional Warden III at Elmore Correctional Facility and was responsible for inmate supervision, institutional security, and the enforcement of policies intended to protect incarcerated persons from violence and serious harm. At all times relevant to this action, Defendant Calloway acted under color of state law and within the course and scope of her employment.

3

4. **Defendant Katrina Brown** ("Defendant Brown") is a citizen of the United States, a citizen of the State of Alabama, and is at least nineteen (19) years of age. Upon information and belief, at all times relevant to this action, Defendant Brown was employed in a supervisory capacity as Correctional Warden II at Elmore Correctional Facility and was responsible for inmate supervision, institutional security, and the enforcement of policies intended to protect incarcerated persons from violence and serious harm. At all times relevant to this action, Defendant Brown acted under color of state law and within the course and scope of her employment.

5. **Defendant Pamela Harris** ("Defendant Harris") is a citizen of the United States, a citizen of the State of Alabama, and is at least nineteen (19) years of age. Upon information and belief, at all times relevant to this action, Defendant Harris was employed in a supervisory capacity as Correctional Warden I at Elmore Correctional Facility and was responsible for inmate supervision, institutional security, and the enforcement of policies intended to protect incarcerated persons from violence and serious harm. At all times relevant to this action, Defendant Harris acted under color of state law and within the course and scope of her employment.

6. **Defendant John Doe 1** ("Defendant Doe 1") is the correctional employee assigned to supervise Dormitory B during the shift in which Mr. Thames was

4

discovered unresponsive on June 20, 2024. Defendant Doe 1 was responsible for inmate accountability, housing assignment enforcement, inmate counts, and security within Dormitory B. Upon information and belief, Defendant Doe 1 knew or should have known that Mr. Thames was not residing in his assigned housing area and failed to take reasonable measures to ensure compliance with housing assignments or otherwise protect Mr. Thames from a substantial risk of serious harm.

7. **Defendant John Doe 2** ("Defendant Doe 2") is the correctional employee assigned to supervise Dormitory C-2 during the shift in which Mr. Thames was discovered unresponsive on June 20, 2024. Defendant Doe 2 was responsible for inmate accountability, housing assignment enforcement, inmate counts, and security within Dormitory C-2. Upon information and belief, Defendant Doe 2 knew or should have known that Mr. Thames was residing in Dormitory C-2 despite not being assigned there and failed to take reasonable measures to remove him from that housing area, report the violation, or otherwise protect him from a substantial risk of serious harm.

8. **Defendant John Doe 3** ("Defendant Doe 3") is the correctional employee responsible for the transportation, supervision, monitoring, restraint, and/or care of Mr. Thames following the assault that occurred on June 19, 2024. Defendant Doe 3 was responsible for ensuring that Mr. Thames was safely transported and

5

properly secured while receiving medical treatment. Upon information and belief, Defendant Doe 3 failed to properly secure, supervise, or monitor Mr. Thames despite his obvious medical condition and serious injuries, resulting in Mr. Thames falling from a gurney or stretcher and striking his head.

9. As set forth more fully below, Defendants' actions and omissions recklessly caused the deprivation of Mr. Thames's constitutional rights by their deliberate indifference to his safety and their failure to protect him from a substantial risk of serious harm while in state custody.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), 28 U.S.C. § 1343(a)(4), and 42 U.S.C. § 1988(a), as this action seeks redress for a violation of the decedent's Eighth and Fourteenth Amendment rights under the Constitution of the United States, pursuant to 42 U.S.C. § 1983.

11. This Court has supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367(a), as they arise from the same case or controversy and are so related to Plaintiff's 42 U.S.C. § 1983 claims.

12. Venue is proper in the United States District Court for the Middle District of Alabama, pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events

and omissions that give rise to Plaintiff's claims occurred within this Court's judicial district.

## FACTUAL ALLEGATIONS

**I.     The Extortion of Randall Thames.**

13. Prior to his June 20, 2024, death, Mr. Thames was the victim of ongoing inmate extortion while incarcerated at Elmore Correctional Facility.

14. Beginning no later than April 2024, members of Mr. Thames's family began receiving communications from inmates and/or individuals involved with inmates housed at Elmore Correctional Facility demanding money on Mr. Thames's behalf.

15. Mr. Thames's family members documented numerous telephone numbers, Cash App accounts, social media accounts, and individuals who requested money or communicated regarding money allegedly owed in connection with Mr. Thames.

16. Between April 2024 and June 2024, family members sent numerous payments to individuals identified by callers and messengers as persons connected to Mr. Thames.

17. The frequency and urgency of the demands increased significantly during the days immediately preceding June 20, 2024.

7

18. Family members, including Plaintiff, became increasingly concerned that Mr. Thames was being extorted, threatened, intimidated, or otherwise coerced by inmates within Elmore.

19. Based upon the repeated demands for money, the escalating nature of the communications, and information received from individuals claiming knowledge of Mr. Thames's circumstances within the prison, family members believed that Mr. Thames faced a serious risk of harm if additional money was not provided.

20. As a result of these concerns, family members sought assistance and intervention in an effort to protect Mr. Thames from further harm.

21. On or about June 18, 2024, members of Mr. Thames's family contacted the undersigned law firm seeking assistance regarding threats to Mr. Thames's safety and the ongoing demands for money being made on his behalf.

22. On the morning of June 20, 2024, an attorney from the undersigned law firm traveled to Elmore Correctional Facility for a legal visit with Mr. Thames. Upon arrival, counsel was informed that Mr. Thames had been involved in an "incident" earlier that morning and had died.

**II.     The Assault of Mr. Thames.**

23. At all times relevant to this action, Mr. Thames was assigned to Dormitory B at Elmore.

24. Upon information and belief, during the days and weeks immediately preceding his death, Mr. Thames was not residing in Dormitory B but was instead residing in Dormitory C-2.

25. Upon further information and belief, Mr. Thames's presence in Dormitory C-2 was related to the extortion, threats, intimidation, or debt-related pressures he was experiencing within Elmore.

26. On the evening of June 19, 2024, and into the early morning hours of June 20, 2024, Mr. Thames was present in Dormitory C-2 at Elmore Correctional Facility.

27. According to the criminal investigation conducted following Mr. Thames's death, inmate Jamie Joshunta Ryans was present in Dormitory C-2 with Mr. Thames during the hours immediately preceding the fatal assault.

28. A dispute arose between Mr. Thames and inmate Ryans while both men were present in Dormitory C-2. According to the criminal complaint subsequently filed against inmate Ryans, Ryans repeatedly struck Mr. Thames with his fists, knees, and feet during the assault.

29. The criminal complaint alleges that Ryans punched Mr. Thames multiple times, kneed him repeatedly in the torso, and stomped on his chest while Mr. Thames was on the ground.

30. The assault occurred between approximately 10:10 p.m. on June 19, 2024, and 1:20 a.m. on June 20, 2024.

9

31. Defendant John Doe 1 was responsible for inmate accountability, inmate counts, housing assignment enforcement, and institutional security within Dormitory B. Upon information and belief, Defendant John Doe 1 knew or should have known that Mr. Thames was not residing in Dormitory B despite being assigned there and failed to take reasonable measures to locate him, return him to his assigned housing unit, or otherwise ensure his safety.

32. Defendant John Doe 2 was responsible for inmate accountability, inmate counts, housing assignment enforcement, and institutional security within Dormitory C-2. Upon information and belief, Defendant John Doe 2 knew or should have known that Mr. Thames was residing in Dormitory C-2 despite not being assigned there and failed to take reasonable measures to remove him from that housing unit, report the violation, or otherwise protect him from the substantial risk of serious harm associated with his continued presence there.

33. In the ordinary course of their duties, Defendants John Doe 1 and John Doe 2 were required to know which inmates were assigned to their respective dormitories and to identify inmates who were residing in unauthorized housing locations.

34. Upon information and belief, Mr. Thames remained in Dormitory C-2 for a sufficient period of time prior to his death that Defendants John Doe 1 and John

10

Doe 2 either knew, or deliberately disregarded facts demonstrating, that he was residing outside of his assigned housing unit.

**III.    Events Following the Assault.**

35. Following the assault, Mr. Thames was transported to the infirmary for medical treatment.

36. After the assault and while receiving medical attention, Mr. Thames fell from a gurney or stretcher and struck his head.

37. Upon information and belief, correctional and/or medical personnel failed to properly secure or monitor Mr. Thames despite his obvious medical condition.

**IV.    Autopsy Findings and Cause of Death.**

38. Following Mr. Thames's death, the Alabama Department of Forensic Sciences ("ADFS") conducted an autopsy.

39. ADFS determined that the cause of Mr. Thames's death was blunt force trauma to the torso and classified the manner of death as homicide.

40. The autopsy documented extensive traumatic injuries to Mr. Thames's body, including multiple blunt-force injuries involving the head, torso, and extremities.

41. The autopsy further documented bilateral rib fractures, multiple lacerations of the spleen, extensive internal bleeding within the abdominal cavity, and hemorrhaging within the chest cavity consistent with significant blunt-force trauma.

42. In contrast, Mr. Thames's death certificate identifies a forehead laceration, cerebral hemorrhage, multiple rib fractures, and intrathoracic hemorrhage and states that Mr. Thames "struck his head on the floor" as the explanation of how his injury occurred.

## V.    Defendant Hamm's Longstanding Notice of Violent and Dangerous Conditions at Elmore Correctional Facility.

43. Long before Mr. Thames's death, Defendant Hamm was, or should have been, aware that Elmore Correctional Facility was plagued by severe and chronic violence, understaffing, inadequate supervision, and the inability of correctional staff to protect incarcerated persons from serious harm.

44. In April 2019, the United States Department of Justice ("DOJ") issued findings concluding that conditions within Alabama's men's prisons, including Elmore, violated the Eighth Amendment to the United States Constitution.[1]

45. In July 2020, following an additional investigation, the DOJ again concluded that Alabama prisons were operating under conditions of severe overcrowding and chronic understaffing that contributed to violence and unconstitutional conditions.[2]

---

[1] *See* Exhibit A.
[2] *See* Exhibit B.

46. The DOJ investigated conditions within the ADOC and found that Alabama prisoners were subjected to a substantial risk of serious harm from violence within ADOC facilities, including at Elmore.

47. The DOJ identified severe and chronic understaffing, inadequate supervision of housing units, failures to control contraband and weapons, inadequate security practices, and pervasive inmate-on-inmate violence as contributing causes of unconstitutional conditions throughout Alabama prisons.

48. The DOJ further found that inadequate supervision and insufficient staffing contributed to a culture in which dangerous conditions persisted without meaningful intervention by prison officials.

49. In its 2020 findings, the DOJ specifically identified a recurring problem within Alabama prisons involving prisoners who became indebted to other prisoners and thereafter feared returning to their assigned housing areas because of threats, intimidation, or violence. The report found that prisoners frequently incurred debts related to contraband, including illegal drugs, and that such debts often resulted in extortion, coercion, threats, assaults, and other forms of inmate-on-inmate violence.

50. Upon becoming Commissioner in January 2022, Defendant Hamm inherited a prison system that had already been the subject of extensive DOJ findings concerning violence, understaffing, inmate extortion, inadequate supervision,

13

and unconstitutional conditions. Defendant Hamm thereafter remained on notice of those conditions through continuing inmate deaths, assaults, litigation, public reporting, and incidents occurring at Elmore during his tenure.

51. The circumstances surrounding Mr. Thames's extortion, his presence outside his assigned dormitory, the failure of prison officials to intervene, and his ultimate homicide were foreseeable consequences of the dangerous conditions about which Defendant Hamm had been warned for years.

52. Despite this notice, Defendant Hamm failed to implement adequate corrective measures, failed to provide sufficient staffing and supervision, failed to ensure compliance with housing assignments, and failed to protect Mr. Thames from the very dangers that federal investigators had warned were occurring throughout Alabama's prison system.

**VI. Defendants Calloway, Brown, and Harris Had Notice of Dangerous Conditions at Elmore Prior to Mr. Thames's Death.**

53. Prior to June 20, 2024, Defendants Calloway, Brown, and Harris ("Defendant Wardens") had actual or constructive notice that inmate-on-inmate violence, inadequate supervision, unauthorized inmate housing arrangements, and dangerous conditions persisted at Elmore Correctional Facility.

54. For example, on November 4, 2022, Marquis Hatcher died from injuries he suffered from an inmate-on-inmate assault at Elmore.

55. On May 16, 2023, Stephone Marshall was stabbed to death at Elmore.

14

56. On July 26, 2023, Rubyn Murray was beaten to death by inmates after a correctional sergeant allowed inmates in a holding cell to assault him at Elmore.

57. On December 1, 2023, Derrek Martin died from injuries sustained in an inmate-on-inmate assault at Elmore. The officer allegedly assigned to the dorm was asleep in the cubicle and no staff responded to his pleas for help.

58. Upon information and belief, the violent deaths of Hatcher, Marshall, Murray, and Martin, amongst others, were known to Defendants Calloway, Brown, and Harris and provided actual notice that prisoners housed at Elmore faced a substantial risk of serious harm from inmate violence, inadequate supervision, and failures of institutional security.

59. The circumstances surrounding Mr. Thames's extortion, his residence outside of his assigned housing unit, and his subsequent homicide closely mirrored the dangerous conditions identified by the United States Department of Justice, which found that prisoners who became indebted to other prisoners frequently faced threats, extortion, violence, and pressure to avoid their assigned housing areas. Despite years of notice regarding these conditions, Defendants failed to implement reasonable measures to identify, investigate, and protect prisoners facing such dangers.

## CAUSES OF ACTION

## FEDERAL CLAIMS

### COUNT I: VIOLATION OF 42 U.S.C. § 1983 – FAILURE TO PROTECT

60. Plaintiff adopts and re-alleges paragraphs 1, 3-7, 9-10, 12-34, 38-42, and 53-59 of this Complaint as if fully set forth herein.

61. This Count is alleged against Defendants Calloway, Brown, Harris, John Doe 1, and John Doe 2.

62. At all relevant times, Mr. Thames was a convicted prisoner entitled to protection under the Eighth Amendment to the United States Constitution.

63. As alleged more fully above, Mr. Thames faced a substantial risk of serious harm from inmate violence, extortion, threats, intimidation, and dangerous conditions within Elmore.

64. Defendants Calloway, Brown, and Harris knew, or were deliberately indifferent to facts demonstrating, that inmates housed at Elmore faced a substantial risk of serious harm from inmate violence, extortion, debt-related coercion, unauthorized housing arrangements, inadequate supervision, and chronic understaffing.

65. Defendants John Doe 1 and John Doe 2 knew, or should have known, that Mr. Thames was residing outside of his assigned housing unit and that such circumstances exposed him to an increased risk of violence.

16

66. Despite this knowledge, Defendants failed to take reasonable measures to protect Mr. Thames, failed to enforce housing assignments, failed to maintain adequate inmate accountability, failed to investigate obvious warning signs, and failed to protect Mr. Thames from foreseeable violence.

67. As a direct and proximate result of Defendants' deliberate indifference, Mr. Thames succumbed to fatal injuries on June 20, 2024.

## COUNT II: VIOLATION OF 42 U.S.C. § 1983 – SUPERVISORY LIABILITY

68. Plaintiff adopts and re-alleges paragraphs 1-7, 9-10, 12-34, and 38-59 of this Complaint as if fully set forth herein.

69. This Count is alleged against Defendants Hamm, Calloway, Brown, and Harris.

70. Defendant Hamm, as Commissioner of the ADOC and Defendants Calloway, Brown, and Harris, as supervisory officials at Elmore, were responsible for establishing, implementing, monitoring, and enforcing policies and practices relating to inmate safety, housing assignments, inmate supervision, institutional security, and the prevention of inmate-on-inmate violence.

71. Prior to June 20, 2024, Defendants Hamm, Calloway, Brown, and Harris had actual or constructive notice that prisoners housed within ADOC facilities, including at Elmore, faced a substantial risk of serious harm from inmate violence, extortion, debt-related coercion, unauthorized housing arrangements, inadequate supervision, overcrowding, and chronic understaffing.

17

72. Defendants were placed on notice through, among other sources, DOJ investigations and findings, inmate deaths, inmate assaults, internal reports, litigation, public reporting, and incidents occurring at Elmore during their tenure.

73. Defendants knew, or were deliberately indifferent to facts demonstrating, that inmates who became indebted to other inmates frequently faced extortion, threats, coercion, violence, and pressure to reside outside their assigned housing areas.

74. Defendants further knew, or were deliberately indifferent to facts demonstrating, that overcrowding, understaffing, and inadequate supervision substantially increased the risk that vulnerable prisoners, like Mr. Thames, would be subjected to serious harm.

75. Despite this notice, Defendants failed to implement reasonable corrective measures sufficient to protect prisoners from known dangers, including inmate extortion, inmate-on-inmate violence, unauthorized housing arrangements, and inadequate supervision within housing units.

76. The circumstances surrounding Mr. Thames's extortion, his residence outside of his assigned housing unit, his exposure to inmate violence, and his ultimate homicide were foreseeable consequences of the conditions about which Defendants had been repeatedly warned.

77. Defendants' actions and omissions constituted deliberate indifference to a substantial risk of serious harm in violation of the Eighth Amendment to the United States Constitution.

78. As a direct and proximate result of Defendants' deliberate indifference, Mr. Thames suffered severe physical injuries and death.

## STATE CLAIMS

### COUNT III: VIOLATION OF ALA. CODE § 6-5-410 – WRONGFUL DEATH

79. Plaintiff adopts and re-alleges paragraphs 1-59 of this Complaint as if fully set forth herein.

80. This Count is asserted against all Defendants.

81. At all relevant times, Defendants owed Mr. Thames a duty to exercise reasonable care for his protection, safety, supervision, housing assignment accountability, and custody while he was incarcerated within the ADOC.

82. Defendants knew, or should have known, that Mr. Thames faced a substantial risk of serious harm arising from inmate violence, extortion, threats, intimidation, unauthorized housing arrangements, inadequate supervision, overcrowding, understaffing, and dangerous conditions within Elmore prior to his death. Nevertheless, Defendants consciously disregarded such obvious risks.

83. Defendant Hamm breached his duties by failing to implement reasonable corrective measures despite longstanding notice of inmate violence, extortion,

19

understaffing, inadequate supervision, and dangerous conditions within Alabama prisons, including Elmore.

84. Defendants Calloway, Brown, and Harris breached their duties by failing to adequately supervise institutional operations at Elmore, failing to address known dangerous conditions, failing to ensure adequate inmate accountability, and failing to take reasonable measures to protect inmates from foreseeable violence.

85. Defendant Doe 1 breached his duties by failing to maintain accountability for inmates assigned to Dormitory B, failing to identify that Mr. Thames was not residing in his assigned housing area, failing to enforce housing assignments, and failing to take reasonable measures to ensure Mr. Thames's safety.

86. Defendant Doe 2 breached his duties by permitting Mr. Thames to reside in Dormitory C-2 despite not being assigned there, failing to enforce housing assignments, failing to maintain inmate accountability, and failing to take reasonable measures to protect Mr. Thames from foreseeable harm.

87. Defendant Doe 3 breached his duties by failing to properly transport, secure, monitor, supervise, and care for Mr. Thames following the assault despite his obvious medical condition and serious injuries.

88. As a direct and proximate result of Defendants' acts and omissions, individually and collectively, Mr. Thames suffered fatal injuries and died on June 20, 2024.

20

89. Defendants' conduct was reckless, wanton, willful, malicious, and demonstrated a conscious disregard for the safety of Mr. Thames.

90. Defendants' conduct proximately caused the death of Randall Lee Thames, Jr.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully requests this Honorable Court enter a judgment in his favor and against Defendants, jointly and severally, for the following relief:

a. Compensatory damages for emotional distress, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and special damages in an amount to be determined by a jury;

b. Nominal damages in an amount to be determined by a jury;

c. Punitive damages in an amount to be determined by a jury;

d. Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

e. All other and further monetary and/or equitable relief as this Honorable Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Respectfully submitted on this 19th day of June 2026.

21

/s/ Kristen E. Gochett
Leroy Maxwell, Jr.
Kristen E. Gochett
*Counsel for Plaintiff*

**OF COUNSEL:**
Maxwell, Tillman & Coleman
1820 3rd Avenue North, Suite 300
Birmingham, AL 35203
Phone: (205) 216-3304
Fax: (205) 409-4145
Email: kgochett@mxlawfirm.com
Email: maxwell@mxlawfirm.com

**DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL AND/OR PRIVATE PROCESS SERVER.**

/s/ Kristen E. Gochett
OF COUNSEL

22